UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE ASACOL ANTITRUST LITIGATION | ) | |
| | ) | Civil Action No. 15-12730-DJC |
| (All Actions) | ) | |
| | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANTS' MOTION TO COMPEL PLAINTIFFS'
## SALES, PRICING, AND PREMIUM INFORMATION

January 4, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on Defendants' Motion to Compel Discovery of Plaintiffs'

Sales, Pricing, and Premium Information.  (Docket No. 220).  As the defendants have described

the scope of their motion:

> Here, Defendants seek production by the Direct Purchaser Plaintiffs of
> certain sales and pricing information, as well as sales contracts and strategy
> documents.  This discovery, which will reflect the relative prices of oral
> dosage ulcerative colitis treatments sold alongside the drugs at issue in this
> case – Asacol, Asacol HD and Delzicol – is relevant to defining the product
> market.  It also bears directly on whether the End Purchaser Plaintiffs were
> injured at all under state law, or instead are simply seeking to reap a windfall
> duplicative recovery.

> Defendants also seek information on End Payor Plaintiffs' premiums and
> profitability.  State laws limit EPPs' recovery to actual damages.  To the
> extent EPPs passed on to enrollees some or all of the alleged overcharges by
> way of premiums, the amount of that pass-on would reduce their actual
> damages.  Moreover, variations in such pass to members of any alleged
> overcharge through premiums may demonstrate class treatment is not
> appropriate here.

Defs. Mem. (Docket No. 221) at 1.  While the plaintiffs object to producing any of this informa-

tion, in an effort at compromise the DPPs have agreed to produce their sales data for the Asacol

Products.  See DPP Mem. (Docket No. 235) at 2.  The parties shall meet and confer to determine

if the defendants are prepared to accept this offer, without waiver of the defendants' rights to

continue to seek broader discovery.  For the reasons detailed herein, the motion to compel is

otherwise denied without prejudice.

## II. ANALYSIS

### A. DPP Discovery

The defendants have requested that the DPPs produce "transaction data showing the

Wholesaler DPPs' sales and pricing to indirect purchasers like retailers and pharmacies, and the

Retailer DPPs' sales and pricing to their customers[,]" purchase and sales contracts "reflecting

the terms and conditions of the purchase and sale of oral dosage ulcerative colitis treatments

between wholesalers and their customers like retailers and pharmacies[,]" and sales and pricing

strategy documents "sufficient to show DPPs' strategies, policies, and practices for setting

prices for and selling to their respective customers wholesale and retail."  Defs. Mem. at 2.  It is

well-established that such "downstream discovery," while "not absolutely prohibited," "is

generally disfavored."  In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., MDL No. 14-

2503-DJC, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016) (and cases cited).  Nevertheless,

the defendants contend that the requested discovery is necessary to (1) define a relevant

product market; (2) counter the EPPs' damage claims and prevent "duplicative recoveries" by

DPPs and EPPs[1]; and (3) determine the existence of "cost plus" contracting at the wholesaler level.  Each of these arguments will be discussed herein.

### 1.      Information Needed to Define the Product Market

Defendants have requested sales and pricing information from the DPPs in order to establish that "the relevant product market is broader than Plaintiffs assert and that a variety of pharmaceutical products are therapeutically substitutable, and in practice are substituted, in the market for ulcerative colitis treatments."  Defs. Mem. at 4.  Thus, the defendants argue, documents showing "the pricing interaction among Asacol, Asacol HD, Delzicol, and their closest substitutes" "will allow the parties and the Court to determine the relevant market."  Id. For the reasons addressed in this court's Memorandum of Decision and Order on Defendants' Motion to Compel Product Market Discovery, the defendants have failed to establish that the requested information would be useful in defining the relevant market.

As the DPPs have accurately summarized the record before this court:

> [W]holesaler sales data is not useful in defining a relevant product market under the circumstances of this case, and Defendants offer no expert opinion to the contrary.  Relevant markets are defined in terms of cross-elasticity at the consumer level, i.e., the extent to which raising the price of one product above the competitive level causes consumers to shift their purchasing choices.  The data that Defendants are asking for is not useful in analyzing that issue for the simple reason that Plaintiffs either do not sell to consumers or sell to such a small fraction of the market that their data would be useless for these purposes.  If a plaintiff's purchases or sales of Asacol go down after a price increase on Asacol, there is no way to determine whether the lost sales represent patients who stopped taking the drug, began taking a different drug, or started getting their prescriptions filled at a pharmacy

---

[1]  The defendants have argued that duplicative recovery is prohibited by state laws and also would violate their federal due process rights.  Regardless of the legal theory, the underlying premise is that the requested discovery would enable the defendants to determine if the DPPs and EPPs were being awarded duplicative recoveries.  For the reasons detailed below, this court finds this argument unpersuasive.

served by a different wholesaler.  Finally, there are better sources of data available to study market definition.  Marketwide data is available from third-party sources like IMS Health; Defendants possess and use such third-party marketwide data for their own business purposes.  There is no need for production of Plaintiffs' sales data.

DPP Mem. at 1-2.[2]  Nevertheless, the DPPs have agreed to produce their sales data for the

Asacol Products.  This offer was rejected by the defendants initially, since the defendants

wanted information about other products as well.  The parties shall meet and confer following

this decision to determine whether the defendants want to accept the offer of the sales data

for Asacol Products only, without waiver of their rights to continue to seek broader discovery, if

appropriate at a later point in the proceedings.

### 2.    Information from DPPs Relevant to Damage Claims of EPPs

The defendants argue that the discovery from the DPPs is necessary to calculate

damages in the EPPs' actions.  According to the defendants, "[t]o show any actual damages,

[under state law] End Purchaser Plaintiffs bear the burden to prove that at least some of the

alleged overcharges incurred by direct purchasers were passed through the distribution chain

to them."  Defs. Mem. at 7.  Thus, "EPPs must show that there was an overcharge to the direct

purchasing wholesalers, who in turn passed on some or all of the overcharge to the retail

pharmacy chains, which in turn were reimbursed by the EPPs."  Id. at 8.  "The requested

discovery will reveal how much of each alleged overcharge of [Asacol Products] was absorbed

or passed on at each step of the distribution chain.  The amount of alleged overcharge that

---

[2]  Like this court's ruling in connection with the Motion to Compel Product Market Discovery, the denial of the instant motion to compel is without prejudice.  In the event the defendants can establish that the requested information is necessary for their expert(s)'s opinions, they should be able to renew the motion to compel, at which time the merits of the request can be considered anew.

Plaintiffs absorbed or passed on will enable the parties to determine whether and to what extent the EPPs may have been injured under state law." Id. Moreover, according to the defendants, the requested discovery is necessary to insure against "duplicative recovery" by direct purchasers asserting claims under federal law and end-payors (indirect purchasers) asserting state law claims. Id. at 9.

Like the motion relating to product market discovery, the instant motion purports to raise contested issues of law that are more appropriately decided directly than in the context of an isolated motion to compel. For example, but without limitation, contrary to the defendants' position regarding the scope of the EPPs' damage claim, the plaintiffs argue that "it is well settled that end payor plaintiffs in pharmaceutical antitrust litigation need not demonstrate the pass on of overcharges from those higher in the distribution chain to prove antitrust injury, or to measure damages. Rather, end payors need only show that the prices paid were greater than prices would have been absent the defendants' anticompetitive conduct." DPP Mem. at 9 (citing In re Flonase Antitrust Litig., 284 F.R.D. 207, 229-30 (E.D. Pa. 2012)) (EPPs need not show that overcharges had been "passed through" to them: rather, in a case alleging foreclosed competition like the instant case, EPPs may demonstrate "that the actual . . . prices paid by the class were greater than the prices it would have paid but for [the defendant's] delaying generic entry.") (and cases cited). According to the EPPs, they are not calculating "injury or damages by relying on a top-down vertical 'pass-through' economic analysis[.]" EPP Mem. (Docket No. 232) at 18. Rather, "EPPs will use a 'yardstick' damages and impact methodology to examine the retail price of the drugs EPPs were forced to purchase" in comparison "to the forecasted price (and volume) of the drug that *should have been available* but-for Defendants' misconduct[.]").

Id. at 19.  See also In re Cardizem CD Antitrust Litig., 200 F.R.D. 326, 344 (E.D. Mich. 2001)

(court recognizes that indirect purchasers "intend to use a 'bottom across' approach which

obviates the complexities Defendants cite in their 'top down' approach.  'Bottom across' means

that the overcharge is determined by examining the price differential between the generic and

the brand drug at the retail level only.  Thus, there will be no need to review 'pass-through'

variations.").  In short, under the plaintiffs' legal theories, the defendants' are seeking legally

irrelevant information.

Similarly, the plaintiffs discount the defendants' concern that there may be duplicative

damages between the DPPs and the EPPs.  According to the plaintiffs, duplicative recovery,

while factually unlikely, is not precluded in the instant case where the DPPs are proceeding

under federal law and the EPPs are asserting state law claims.  See DPP Mem. at 10-14; EPP

Mem. at 16-17.  As the court held in In re Flash Memory Antitrust Litigation, 643 F. Supp. 2d

1133 (N.D. Cal. 2009), states which allow "indirect purchasers to sue for antitrust violations[]

have necessarily made the policy decision that duplicative recovery may permissibly occur.

Duplicative recovery is, in many if not all cases alleging a nationwide conspiracy with both

direct and indirect purchaser classes, a necessary consequence that flows from indirect

purchaser recovery."  Id. at 1156 (internal quotation omitted).  In short, under the plaintiffs'

legal analyses, the requested information is not relevant to the issues in this case.

Again, however, this court does not have to resolve these legal disputes at this time.  As

the DPPs have asserted,

> wholesaler data will not enable Defendants to perform the analysis they
> claim to propose to do, *i.e.*, trace each sale of Asacol or Delzicol through the
> chain of distribution in order to calculate the absorption and pass-on of
> overcharges through each level, from Defendants, to wholesalers, to

> pharmacies, and then to end payors.  The reason is simple – pharmaceutical
> wholesalers do not sell to consumers.  Wholesalers sell to pharmacies, and
> pharmacies are not members of the end payor class.  Defendants do not
> explain how such tracing could be performed with wholesaler sales data.

DPP Mem. at 8-9.  Similarly, as the EPPs have asserted,

> None of the discovery Defendants seek from the DPPs is relevant to EPP
> injury or damages.  EPPs utilize market-wide data – data that can be obtained
> from a third-party vendor like IMS-Health – to show antitrust injury and
> damages.  This data is likely in Defendants' possession already for use in
> internal business forecasting.  If not, they may purchase it (as EPPs must do)
> or wait for EPPs to produce it pursuant to the expert disclosure deadlines
> entered by the Court.

EPP Mem. at 18.  Moreover, the defendants have not explained how the requested information

would enable them to avoid duplicative damages.  See EPP Mem. at 17.

In response to the plaintiffs' contention that the requested discovery will not provide

the information the defendants are purportedly seeking, the defendants continue to argue that

they are not obligated to retain an expert in connection with their discovery requests.  See

Defs. Reply (Docket No. 243) at 2.  As detailed more fully in this court's Order on Defendants'

Motion to Compel Product Market Discovery, while no expert opinion is required, this court

finds the plaintiffs' arguments to be persuasive and unrebutted.  Therefore, the motion to

compel is denied.

### 3.    "Cost-plus" Contracts

The defendants have requested that the DPPs produce their supply contracts to deter-

mine if they are selling on a "cost-plus" basis.  The DPPs do not agree that this inquiry is legally

relevant, but, more importantly, assert that there are no such contracts.  DPP Mem. at 14.

While the defendants contend that the supply contracts should nevertheless be produced in

order to test the veracity of the DPPs' assertion, this court does not have any basis to challenge

the truth of the DPPs' representations.  Therefore, the motion to compel these contracts is

denied.

        **B.**      <u>**EPP Discovery**</u>

                **1.**      <u>**"Pass-On" Overcharges**</u>

        The defendants are seeking from the EPPs documents relating "to the determination of

premiums or employee contributions for overall prescription drug coverage, untethered from

Asacol, Asacol HD, and Delzicol, including the manner in which EPPs calculate such premiums or

contributions."  EPP Mem. at 3.  In addition, the defendants are seeking "information related to

each EPP's financial status and profitability for each year."  <u>Id.</u>  According to the defendants,

this information is needed to determine "whether the plaintiff was able to mitigate the effect

of paying the alleged overcharge, such as by passing on some or all the overcharge to someone

else."  Defs. Mem. at 15.  The EPPs object to producing this information both because EPPs do

not "pass-on" Asacol overcharges as a matter of fact, and because the requested discovery is

irrelevant as a matter of law.  This court finds the EPPs' arguments persuasive, and the motion

to compel is denied.

        As Magistrate Judge Boal recently concluded in denying similar discovery in the <u>Solodyn</u>

antitrust litigation, "[t]he Court finds persuasive the reasoning of those courts that have found

that insurance premiums are not a 'pass on' of alleged overcharges because premiums are set

by anticipating future projected costs, not to recover money that insurers paid in the past."  <u>In</u>

<u>re Solodyn (Minocycline Hydrochloride) Antitrust Litig.</u>, MDL No. 14-2503-DJC, 2016 WL

6897809, at *2 (D. Mass. Sept. 19, 2016) (citing <u>In re Thrazosin Hydrocholoride</u>, 220 F.R.D. 672,

690 (S.D. Fla. 2004)).  Moreover, there is no evidence that the defendants would be able to

ascertain how the pricing of Asacol Products affected premiums or the financial status of the

EPPs, since "EPPs reimburse prescriptions for thousands – if not tens of thousands – of different

drugs and dosages."  EPP Mem. at 4.  Thus, even ignoring the fact that "the overwhelming

majority" of factors that go into setting contribution rates and premiums "have nothing to do

with drug prices[,]" the defendants would not be able to ascertain the effect of the Asacol

Products' prices by analyzing premiums or the EPPs' financial status.  See Id.[3]

### 2.   Issues Relating to Class Certification

Finally, the defendants argue that "[d]iscovery may show that each EPP passes on

overcharges in a different way[,]" so that the discovery may be relevant on the issue whether a

class is appropriately certified.  Defs. Mem. at 19-20.  This argument is unpersuasive.  As the

EPPs argue, "[s]ince premiums do not – as a legal or factual matter – bear on EPP damages or

antitrust impact, such discovery is necessarily irrelevant to class certification."  EPP Mem. at 18.

For the reasons detailed above, this court finds that the defendants have not established that

discovery relating to any alleged pass on should be produced at the present time.  Therefore,

the motion to compel the discovery from the EPPs is denied.

### III.  ORDER

For all the reasons detailed herein, the defendants' Motion to Compel Discovery of

Plaintiffs' Sales, Pricing, and Premium Information (Docket No. 220) is denied without prejudice,

---

[3] In light of this conclusion that the requested discovery is irrelevant as a matter of fact, this court does not reach the issue whether it is irrelevant as a matter of law.  This court does note, however, that while the defendants argue that they can consider a pass-on defense under a few states' laws, the EPPs argue that they are proceeding under the laws of 25 states and the District of Columbia, 22 of the states expressly or implicitly disallow the "pass-on" defense, and the 3 remaining states and District of Columbia do not allow the "pass-on" defense against EPPs which "are the final link in the distribution chain[.]"  See EPP Mem. at 10-14.  Thus, the defendants' legal position is clearly disputed.

except that if the defendants so desire, the DPPs shall produce their sales data for the Asacol

Products.  By agreeing to accept such information, the defendants are not waiving their rights

to continue to seek broader discovery, if appropriate at a later point in the proceedings.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
