## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ASACOL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Direct Purchaser Actions | Civil Action No. 1:15-cv-12730 (DJC) |

### SETTLEMENT AGREEMENT

This Settlement Agreement, dated August 17, 2017, is made and entered into by and between Allergan, Plc (f/k/a Actavis, Plc), Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC (collectively, the "Allergan defendants"); Warner Chilcott Limited; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; and Warner Chilcott Co., LLC (collectively, the "Warner Chilcott defendants") (together "Defendants"), by and through their counsel White & Case LLP, and Ahold USA, Inc. ("Ahold"), Meijer, Inc., Meijer Distribution, Inc. ("Meijer"), Value Drug Company ("VDC"), and Rochester Drug Co-Operative, Inc. ("RDC") (collectively, "Plaintiffs"), individually and on behalf of the direct purchaser class (as defined in Paragraph 1 below, the "Direct Purchaser Class") to be certified for purposes of settlement only, by and through Hagens Berman Sobol Shapiro LLP, Garwin Gerstein & Fisher LLP, Faruqi & Faruqi LLP, and Hilliard & Shadowen LLP, in their capacity as Interim Co-Lead Counsel for the Direct Purchaser Class ("Plaintiffs' Counsel") in the above-captioned litigation. This Settlement Agreement is intended to, and upon occurrence of the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Direct Purchaser Class in the above-captioned litigation, subject to the terms and conditions set forth herein.

This Settlement Agreement is not intended by the parties to affect the claims of the proposed end-payor class in the above-captioned case;

WHEREAS, Plaintiffs filed multiple lawsuits alleging that Defendants engaged in a scheme to delay the approval and sale of generic versions of Asacol, Asacol HD and Delzicol, brand name drugs used to treat ulcerative colitis;

WHEREAS, Plaintiffs' claims were consolidated under the caption *Ahold USA, Inc., v. Allergan PLC*, No. 16-cv-11498 (DJC), before the United States District Court for the District of Massachusetts (the "Court") as a putative class action on behalf of a class of allegedly similarly-situated persons or entities who purchased Asacol HD, and/or Delzicol, and/or generic Asacol HD in any form directly from any of the Defendants at any time during the period July 31, 2013 through the present (the "Direct Purchaser Class Action" or the "Action");

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations, have not conceded or admitted any liability or that Plaintiffs' claims timely were filed within the applicable statutes of limitations, have not conceded or admitted the propriety of certification of any class in this Action for any purposes other than settlement, have not conceded or admitted the validity of any assignments under which any Plaintiffs pursue claims in the Action or the propriety or pursuing claims based on partial assignments, and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any Defendant, or of the truth of any of the claims or allegations alleged in the Direct Purchaser Class Action;

WHEREAS, Plaintiffs' Counsel have concluded, after extensive fact discovery, and after considering the circumstances of the Direct Purchaser Class Action, including the claims asserted in the Consolidated Amended Class Action Complaint, filed September 13, 2016 (the

"Complaint"), and the possible and asserted legal and factual defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Direct Purchaser Class and further, that Plaintiffs' Counsel consider the Settlement set forth in this Settlement Agreement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and in the best interests of the Direct Purchaser Class;

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their respective best interests to enter into this Settlement Agreement to avoid the uncertainties and additional costs of further litigation and to finally put to rest all claims relating to the Action;

WHEREAS, counsel for the Plaintiffs, on behalf of themselves and the proposed Direct Purchaser Class on the one hand, and counsel for Defendants on the other, have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the settlement between Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Defendants;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Plaintiffs and the Direct Purchaser Class, on the one hand, and Defendants on the other, that the Direct Purchaser Class Action and all claims of Plaintiffs and the Class be settled, compromised and dismissed with prejudice as to Defendants (and, except as hereinafter provided, without costs as to Plaintiffs, the Direct Purchaser Class or Defendants), subject to Court approval, on the following terms and conditions:

1. **Class Certification.** Plaintiffs shall seek, and Defendants shall support, certification of the following Direct Purchaser Settlement Class for purposes of

this settlement only:

> All persons or entities in the United States and its territories, or subsets thereof, that purchased Asacol HD and/or Delzicol in any form directly from Warner Chilcott or Allergan, including any predecessor or successor of Warner Chilcott or Allergan, at any time between July 31, 2013 through the date on which the Court certifies the Direct Purchaser Class (the "Class" and the "Class Period," respectively). Excluded from the class are Defendants, and any officers, directors, management, employees, subsidiaries, and affiliates.

Defendants represent that they have already provided Plaintiffs with data and information in their possession sufficient to identify the names and addresses of all direct purchasers, as well as data showing each direct purchaser's gross and net purchases of Asacol HD, and/or Delzicol, and/or generic Asacol HD during the Class Period, in dollars and units.   Plaintiffs are evaluating that data and may need additional information, including data, to effectuate notice and distribution to the class. Defendants agree to work with Plaintiffs on any such requests.

2. **Best Efforts to Effectuate This Settlement.**  Counsel for the undersigned agree to recommend approval of this Settlement Agreement to the Court and to undertake their best efforts, including undertaking all actions contemplated by and steps necessary to effectuate this Settlement Agreement, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of all claims in the Direct Purchaser Class Action.  This includes Defendants serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

3. **Motion for Preliminary Approval of the Settlement.**  Plaintiffs shall submit to the Court – and Defendants shall support – a motion (the "Motion") requesting entry of an order certifying the Direct Purchaser Class, preliminarily approving the settlement, and authorizing dissemination of notice to the Direct Purchaser

Class (the "Preliminary Approval Order").  The Motion shall:

a.    provide the definition of the Class to be certified by the Court pursuant to this Settlement Agreement;

b.    request preliminary approval of the Settlement as fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23;

c.    seek the appointment of the law firms of Hagens Berman Sobol Shapiro LLP, Faruqi & Faruqi LLP, Hilliard & Shadowen LLP, and Garwin Gerstein & Fisher LLP as Plaintiffs' Counsel under Fed. R. Civ. P. 23(g);

d.    request a stay of all proceedings against Defendants in the Direct Purchaser Class Action, except those proceedings provided for or required by this Settlement Agreement;

e.    seek approval for notice to the Class by means of direct first-class United States mail notice in the form substantially as set forth in an attachment to the Motion; and

f.    include a proposed form of order, which includes such provisions as are typical in such orders, including a finding that the proposed plan of notice complies with Rule 23 and the requirements of due process, and a provision that if final approval of the settlement is not obtained, the settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

4.    **Motion for Final Approval and Entry of Final Judgment.**  If the Court preliminarily approves this Settlement Agreement, Plaintiffs shall submit – and Defendants shall support – a motion for final approval by the Court of this Settlement Agreement ("Final Approval Motion") after notice has been disseminated to the Class pursuant to the Preliminary Approval Order.  The Final Approval Motion shall be submitted to the Court within twenty-one (21) days after the Court-ordered deadline by which members of the Class may exclude themselves from the Class or object to the Settlement, and shall seek entry of an order and final judgment ("Final Approval Order"):

a.    finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the Direct Purchaser Class

within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.      finding that all Class Members shall be bound by this Agreement, including the release provisions and covenant not to sue set forth in this Agreement;

c.      finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

d.      incorporating the release set forth in Paragraphs 10 and 11 of this Settlement Agreement, and forever barring the Releasors from asserting any Released Claims against any of the Releasees as defined below;

e.      providing for the payment of reasonable attorneys' fees and reimbursement of expenses from the Settlement Fund;

f.      providing for payment solely from the Settlement Fund of service awards in the amount of $100,000 each to the named plaintiffs Meijer, RDC, VDC and Ahold in addition to whatever monies each may receive from the Settlement Fund pursuant to a Court-approved Plan of Allocation;

g.      directing that the Direct Purchaser Class Action be dismissed with prejudice as to Defendants and, except as provided for herein, without costs or attorney's fees recoverable under 15 U.S.C. § 15(a);

h.      retaining exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement;

i.      directing that the judgment of dismissal with prejudice of all Direct Purchaser Class claims against Defendants shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay; and

k.      directing that, for a period of five years, the Clerk of the Court shall maintain the record of those members of the Class who have timely excluded themselves from the Direct Purchaser Class ("Opt-Outs") and that a certified copy of such records shall be provided to Defendants.

5.      **Finality of Settlement.** This Settlement Agreement shall become final upon the

occurrence of all of the following (the "Effective Date"):

a.      The Settlement is not terminated pursuant to Paragraph 13 below;

b.      The Settlement and this Settlement Agreement are approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.   The Court enters the Final Approval Order, entering a final judgment of dismissal with prejudice against Plaintiffs and the members of the Direct Purchaser Class who have not timely excluded themselves from the Direct Purchaser Class Action ("Class Members") as to Defendants; and

d.   The time for appeal from the Court's signing of the Final Approval Order has expired or, if the Final Approval Order is appealed, it has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken.

6.   **Settlement Payment.**  Within thirty (30) days after the latter of the entry of the Preliminary Approval Order or receipt of wire transfer instructions from Plaintiffs' Counsel, Defendant Warner Chilcott shall pay fifteen million dollars ($15,000,000.00) (the "Settlement Amount") to the designated account (the "Settlement Fund"), which shall be held in escrow (the "Escrow Account") subject to the terms and conditions of the escrow agreement attached hereto as Exhibit A, and in accordance with the provisions of Paragraphs 7, 14, and 16 below.  Defendants shall not pay any additional amount at any time, whether for wire transfer fees or bank fees of any kind associated with the wire transfer of funds, interest, notice, administration, costs, attorneys' fees, or otherwise, into the Escrow Account.  The total consideration that Defendants will pay for this Settlement shall be the Settlement Amount only.

7.   **The Settlement Fund.**

a.   Before the Court issues the Final Approval Order, disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with administering the Settlement, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement ("Administration Expenses") may be made from the Settlement Fund, and 50% of all such amounts shall be

refundable to Defendants in the event the Agreement is disapproved, terminated, or otherwise fails to become effective. Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than $50,000. Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

  b.  At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested pursuant to Paragraph 3 of the Escrow Agreement as directed in writing by Co-Lead Class Counsel: (1) Thomas M. Sobol or Lauren G. Barnes of Hagens Berman Sobol Shapiro LLP; (2) Bruce E. Gerstein of Garwin Gerstein & Fisher LLP; (3) Steve D. Shadowen of Hilliard & Shadowen LLP; or (4) Peter Kohn of Faruqi & Faruqi LLP. All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund.

  c.  After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution.

  d.  After making the payment described in Paragraph 6 above, Defendants shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for any disputes relating to the amount, allocation, or distribution of any fees, costs or awards. Further, after making the payment described in Paragraph 6 above, Defendants shall not be liable for any additional payments to the Class or Plaintiffs' Counsel pursuant to this

Settlement Agreement.

e.      Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses.   Defendants shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Plaintiffs' or the Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

8.      **Full Satisfaction; Limitation of Interest and Liability.**   Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Defendants of all claims that are released hereunder.   Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

9.      **Attorneys' Fees, Expenses and Costs.**

a.      Plaintiffs' Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one third of the total Settlement Fund (including any interest accrued thereon), the reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, and service awards to the named Plaintiffs ("Fee and Expense Award").   Plaintiffs' Counsel shall file a motion for approval of the Fee and Expense Award ("Motion for Fee and Expense Award") after the Court has granted preliminary approval to the Settlement but sufficiently before the Court's final fairness hearing on the Settlement, and Defendants agree to take no position with respect to the Motion for Fee and Expense Award, or on any other application by Plaintiffs' Counsel for fees and/or expenses to be paid only from the Settlement Fund as may be necessary to effectuate this Settlement Agreement.   Defendants also agree not to oppose any request by Plaintiffs' Counsel that the Court order that any Fee and Expense Award be disbursed only to the Court appointed Co-Lead Counsel for the Class for allocation among the various counsel to the

Class that have participated in this litigation. Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all such fees and expenses. In no event shall any Fee and Expense Award be paid before the Effective Date. Plaintiffs, members of the Direct Purchaser Class, and their respective counsel, shall not seek payment of any attorneys' fees, expenses, costs, or service awards from Defendants in this action, or in any other action related to the released claims set forth in paragraphs 10 and 11 hereof, from any source other than the Settlement Fund.

b.      The procedures for and the allowance or disallowance by the Court of the application by Plaintiffs' Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in Paragraph 9(a).

c.      If the Court's award of such fees and expenses is vacated, reversed, or reduced subsequent to the disbursement of any Fee and Expense Award, Plaintiffs' Counsel shall within ten (10) business days after receiving written notice from the Court or from Defendants of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest, and further provided that if Plaintiffs and/or Defendants elect to terminate the Settlement Agreement pursuant to Paragraph 13 below, Plaintiffs' Counsel shall within ten (10) business days after giving notice to or receiving notice from Defendants of such rescission, make a refund to the Escrow Account in the amount of any

such Fee and Expense Award with interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of Litigation Expenses and any refund required by this Paragraph. Plaintiffs' Counsel and their respective law firms shall be jointly and severally liable to each other, but not to any other Class Counsel or law firm, for such repayment.

10. **Releases and Covenants.** Upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in Paragraph 6 above, Plaintiffs and all Class Members, on behalf of themselves and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (the "Releasors"), hereby release and forever discharge, and covenant not to sue Defendants and their past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (the "Releasees") from all claims under federal or state laws whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, that arise out of or relate, in whole or in part in any manner, to:

> (a) the subject matter of or acts, omissions, or other conduct alleged in the Complaint in the Direct Purchaser Class Action, any prior complaints or subsequent amended complaints filed in the Direct Purchaser Class Action; (b) the subject matter of pre-trial proceedings in the Direct Purchaser Class Action; and/or ( c) all claims concerning alleged delayed entry of generic versions of Asacol, Asacol HD or Delzicol that could have been asserted in the Direct Purchaser Class Action, including but not limited to claims of reverse payments, product hop, sham patent listings, and sham patent litigations (collectively, this entire paragraph the "Released Claims").

This Settlement Agreement is not intended to release anyone other than the Releasees, is not on behalf of anyone other than the Releasors, and does not affect the claims of the proposed end-payor class, nor is it intended to release any actual or potential claims described in Paragraph 12.

11.   **Additional Release.**   In addition, with respect to the claims that are the subject matter of Paragraph 10, each Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming final, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 10.  Nonetheless, upon the Effective Date each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 10, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Plaintiff and member of the Direct Purchaser Class also hereby expressly

12

waives and fully, finally and forever settles, releases and discharges any and all claims that are

the subject matter of Paragraph 10 that it may have against any Releasees under § 17200, et seq.,

of the California Business and Professions Code or any similar comparable or equivalent

provision of the law of any other state or territory of the United States or other jurisdiction.

12. **Reservation of Claims.** The intent of this Settlement is to effect a complete and
total resolution of this Action to the extent of the claims of the Direct Purchaser
Plaintiff Class that were or could have been asserted relating to the allegations in
this Action, but is not intended to release any claims arising in the ordinary course
of business between Releasors and the Releasees arising under Article 2 of the
Uniform Commercial Code (pertaining to sales), the laws of negligence or
product liability or implied warranty, breach of contract, breach of express
warranty, or personal injury, or other claims unrelated to the Asacol HD or
Delzicol antitrust allegations in this Action.

13. **Termination.**

a.    Defendants shall have the option to terminate the Settlement and have its

Settlement Payment refunded if any of the following occur:  (a) the Court declines to grant final

approval to the Direct Purchaser Class Settlement, or (b) a mutually agreed upon percentage of

the proposed Direct Purchaser Class (measured as a percentage of direct purchases during the

Class Period) opts out of the Direct Purchaser Class Settlement.  The agreed upon opt-out

percentage triggers, as well as the consequences should Defendants elect to proceed with the

Settlement despite the occurrence of one or more of the agreed triggers, are specified in Exhibit

B to this Settlement Agreement (filed under seal).  If for any reason the Settlement does not

become final in accordance with the terms of Paragraph 5 of this Settlement Agreement, then (i)

13

this Settlement Agreement shall be of no force or effect; (ii) all funds paid by Defendants into

the Settlement Fund, plus interest (net of any taxes paid on such interest), less 50% of any fees

that were expended or are owed to pay the costs of notice and notice administration, shall be

returned to Defendants within thirty (30) days of the Escrow Agent's receipt of Defendants'

notice of termination; (iii) any release pursuant to Paragraphs 10 and 11 above shall be of no

force or effect; and (iv) the parties agree, subject to the Court's approval, that litigation of the

Direct Purchaser Class Action by Plaintiffs and the Direct Purchaser Class will resume, in a

reasonable manner and on a reasonable timetable to be approved by the Court.  For the

avoidance of doubt, any order of the Court that (a) narrows or does not approve the scope of the

release and covenant not to sue contemplated by this settlement, (b) purports to impose

additional material obligations on Defendants, or (c) declines to enter a final judgment that meets

the minimum requirements set forth in Paragraph 4 of this Agreement, or any order on review or

appeal that would have the foregoing effects, except as otherwise agreed to in writing by

Defendants, constitutes a failure to grant final approval of this Agreement and confers on

Defendants the right to terminate provided by this Paragraph.

      b.    A modification or reversal on appeal of any amount of the Fee and Expense

Award shall not be deemed a modification of all or a part of the terms of this Settlement

Agreement or such Final Approval Order and shall not give rise to any right of termination.

      **14.**    **Reimbursement of the Settlement Fund Upon Termination.**  If Defendants

elect to terminate this Settlement Agreement pursuant to the provisions of

Paragraph 13 above, the Escrow Agent shall return the Settlement Fund –

including any Fee and Expense Award paid to Plaintiffs' Counsel (the "Net

Settlement Fund") – to Defendants.  Subject to Paragraph 8 of the Escrow

Agreement, the Escrow Agent shall disburse the Net Settlement Fund to Defendants in accordance with this Paragraph within fifteen (15) business days after receipt of either (i) written notice signed by Plaintiffs' Counsel and Defendants' counsel stating that this Settlement Fund has been terminated, or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to Paragraph 13 above, any obligations pursuant to this Settlement Agreement (other than disbursement of the Net Settlement Fund to Defendants as set forth above) shall cease immediately and the releases set forth in Paragraphs 10 and 11 shall be null and void.

15.   **Preservation of Rights.**  The parties hereto agree that this Settlement Agreement, whether it becomes final or not, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (except to the extent provided herein), shall not be deemed or construed to be an admission or evidence of any violation of any statute or law (or lack thereof), of any liability or wrongdoing by Defendants (or lack thereof), or of the truth (or lack thereof) of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way (other than to effectuate or enforce the terms of this Settlement Agreement).  The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

16.   **Taxes.**

a.    The parties intend that any taxes due as a result of income earned by the

Settlement Fund will be paid from the Settlement Fund. Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Plaintiffs' Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph. Defendants shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Defendants. Other than as specifically set forth herein, Defendants shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Defendants are required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Defendants with notice to Plaintiffs' Counsel, timely pay to Defendants sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

  b.      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in

Treas. Reg. § 1.468B-2(1)).

c.      The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner.  In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

17.     **Binding Effect.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Releasees.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all Class Members.

18.     **Integrated Agreement.**  This Settlement Agreement, together with the schedules and exhibits hereto and the documents incorporated herein by reference, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Agreement, and supersedes all prior agreements

or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof.  This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the parties hereto.

19. **Independent Settlement.**  This Settlement of the Direct Purchaser Class Action is not conditioned on approval by any other direct purchaser or settlement of any other case. This Settlement of the Direct Purchaser Class Action is not conditioned on the disposition of the claims of the end-payor class.

20. **Headings.**  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

21. **No Party is the Drafter.**  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

22. **Choice of Law.**  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law.

23. **Consent to Jurisdiction.**  Defendants and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Massachusetts for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  Nothing in this paragraph

shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

24.   **Representations and Warranties.**  Each party hereto represents and warrants to each other party hereto that it has the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

25.   **No Admission.**  Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Defendants, including, without limitation, that Defendants have engaged in any conduct or practices that violate any antitrust statute or other law.

26.   **Notice.**  Notice to Defendants pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

J. Mark Gidley
Peter J. Carney
Eileen M. Cole
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
mgidley@whitecase.com
pcarney@whitecase.com
ecole@whitecase.com

Jack E. Pace III
Alison Hanstead
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jpace@whitecase.com
ahanstead@whitecase.com

Kate Dyson
WHITE & CASE LLP
75 State Street, Floor 24
Boston, MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
kdyson@whitecase.com

Notice to the Plaintiffs pursuant to this Settlement Agreement shall be sent by United States mail

and electronic mail to Interim Co-Lead Class Counsel:

Thomas M. Sobol
Lauren Guth Barnes
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge MA 02142
Tel: (617) 482-3700
Email: tom@hbsslaw.com
      lauren@hbsslaw.com

Steve Shadowen
Hilliard & Shadowen LLP
919 Congress Ave., Suite 1325
Austin, TX, 78701
Tel: (512) 993-3070
Email: steve@hilliardshadowenlaw.com

Bruce E. Gerstein
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Email: bgerstein@garwingerstein.com

Peter Kohn
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
Email: pkohn@faruqilaw.com

27. **Execution in Counterparts.** This Settlement Agreement may be executed in

counterparts, and a facsimile or .pdf signature shall be deemed an original

signature for purposes of executing this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement as of the date first herein above

written.

By: *Lauren Guth Barnes*

Thomas M. Sobol
Lauren Guth Barnes
Kiersten A. Taylor
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, Massachusetts 02142
Tel: 617-482-3700
Fax: 617-482-3003
tom@hbsslaw.com
lauren@hbsslaw.com
kierstent@hbsslaw.com

Bruce E. Gerstein
Joseph Opper
Dan Litvin
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

Peter Kohn
Joseph T. Lukens
Neill W. Clark
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com
nclark@faruqilaw.com

Steve D. Shadowen
D. Sean Nation
Matthew C. Weiner
HILLIARD & SHADOWEN LLP
919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 993-3070
steve@hilliardshadowenlaw.com
sean@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com

*Interim Co-Lead Counsel for the Proposed*
*Direct Purchaser Class*

By: _____

J. Mark Gidley (PHV)
Peter J. Carney (PHV)
Eileen M. Cole (PHV)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
mgidley@whitecase.com
pcarney@whitecase.com
ecole@whitecase.com

Jack E. Pace III (PHV)
Alison Hanstead (PHV)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jpace@whitecase.com
ahanstead@whitecase.com

Kate Dyson
WHITE & CASE LLP
75 State Street, Floor 24 Boston,
MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
kdyson@whitecase.com

*Counsel for Defendants*

# Exhibit A

**ESCROW AGREEMENT**

This Escrow Agreement dated August 17, 2017, is made among Hagens Berman Sobol Shapiro LLP, Garwin Gerstein & Fisher LLP, Faruqi & Faruqi LLP, and Hilliard & Shadowen LLP in their capacity as counsel for plaintiffs Rochester Drug Co-Operative, Inc. and Ahold USA, Inc., Meijer, Inc. and Meijer Distribution, Inc., and Value Drug Company and Interim Co-Lead Class Counsel for the Direct Purchaser Class, as defined in the Settlement Agreement (the "Settlement Agreement") entered into in the litigation entitled *In re: Asacol Antitrust Litigation*, Civil Action No. 1:15-cv-12730 (DJC) (D. Mass.) (the "Class Action"), ("Class Counsel"), Allergan plc, Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC (collectively, "Allergan"), Warner Chilcott Limited, Warner Chilcott (US), LLC, Warner Chilcott Sales (US), LLC, and Warner Chilcott Co., LLC (collectively "Warner Chilcott", and together with Allergan, "Defendants"), by and through their counsel White & Case LLP ("Defense Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

Recitals

A.     This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement Agreement dated August 17, 2017 (the "Settlement Agreement") to which this Agreement ("Escrow Agreement") is attached as Exhibit A, entered into by Class Counsel on behalf of the Direct Purchaser Class and Defense Counsel on behalf of Defendants, will be paid to settle the direct purchaser claims in the class action captioned *In re Asacol Antitrust Litigation*, Civil Action No. 1:15-cv-12730 (DJC) (D. Mass.), pending in the United States District Court for the District of Massachusetts (the "Court").

B.     Pursuant to the terms of the Settlement Agreement, Defendants have agreed to pay or cause to be paid the total amount of Fifteen Million Dollars ($15,000,000) in cash (the "Settlement Amount") in settlement of the Released Claims as defined in the Settlement Agreement.

C.     The Settlement Amount, together with any interest accrued thereon, is to be deposited into escrow and used to satisfy payments to authorized claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

**Agreement**

1.     Appointment of Escrow Agent.  Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.     The Escrow Account.  Escrow Agent shall establish and maintain an escrow account titled as the Asacol Antitrust Direct Purchaser Class Settlement Account (the "Escrow Account").  Pursuant to the Settlement Agreement, the Defendants shall cause the Settlement

Amount to be deposited into the Escrow Account within thirty (30) days following the later of the entry of the Preliminary Approval Order or receipt of wire transfer instructions from Plaintiffs' Counsel. Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3.     Investment of Settlement Fund. At the written direction of Class Counsel, Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

4.     Escrow Funds Subject to Jurisdiction of the Court. The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.     Tax Treatment & Report. The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Class Counsel and, as required by law, Defendants, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel. Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.     Tax Payments of Settlement Fund. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and Escrow Agent shall timely pay such Taxes out of the Settlement Fund, as appropriate, without prior order of the Court, as directed by Class Counsel. Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund. The Settlement Fund shall indemnify and hold the Defendant harmless for any

2

taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendants pursuant to the terms of the Settlement Agreement, the Defendants shall provide Escrow Agent with a properly completed Form W-9.

7.     Disbursement Instructions

(a)     Class Counsel may, without further order of the Court or authorization by the Defendants' Counsel, instruct Escrow Agent to disburse the funds necessary to pay Administration Expenses for amounts (in the aggregate) of less than $50,000.  Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

(b)     After the Effective Date of the Settlement Agreement, disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court or (ii) the written consent of Thomas M. Sobol, Lauren G. Barnes, Bruce E. Gerstein, Steve D. Shadowen or Peter Kohn of Class Counsel.

(c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b).  To assure accuracy of the instructions it receives, Escrow Agent may record such call backs.  If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent.  Class Counsel will notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

8.     Termination of Settlement.  If the Settlement Agreement terminates in accordance with its terms, upon receipt of either (i) written notice signed by Class Counsel and Defense Counsel stating that the Settlement Agreement has been terminated or (ii) any order of the Court disapproving the Settlement Agreement, the balance of the Settlement Fund, together with any

interest earned thereon, less (x) any unpaid Taxes due, as determined by Class Counsel and Defendants, and (y) an amount equal to 50% of any class notice and notice administration expenses paid or incurred but for which Class Counsel has not yet received reimbursement from the Escrow Fund as of the termination date (provided that Class Counsel provides documentation of such expenses to Escrow Agent and to counsel for Defendants), shall be returned to Defendants in accordance with wiring instructions provided by Defense Counsel. For avoidance of doubt, if the Settlement Agreement is terminated, Class Counsel are entitled to reimbursement only for 50% of the total costs incurred in providing class notice and notice administration, with the other 50% of such class notice and notice administration costs to be covered by Class Counsel.

9.    Fees.  Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit 1. All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund.  The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.  If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.    Duties, Liabilities and Rights of Escrow Agent.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)    Escrow Agent may reasonably act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney, or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)    Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Class Counsel if after the Effective Date or upon approval of both Class Counsel and Defense Counsel if prior to the Effective Date or (ii) pursuant to an order of the Court.

(c)    Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)    Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

4

(e)     Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement. Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities, and expenses (including reasonable legal fees and expenses of attorneys chosen by Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act, or alleged omission by Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

11.     Non-Assignability by Escrow Agent.     Escrow Agent's rights, duties, and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.     Resignation of Escrow Agent.     Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.  On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.  If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

13.     Notices.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail, or overnight courier service, addressed as follows:

5

If to Class Counsel:   Thomas M. Sobol
           Lauren G. Barnes
           Kiersten A. Taylor
           Hagens Berman Sobol Shapiro LLP
           55 Cambridge Parkway, Suite 301
           Cambridge, MA 02142
           Tel: (617) 482-3700
           Email: tom@hbsslaw.com
               lauren@hbsslaw.com

           Steve Shadowen
           Hilliard & Shadowen LLP
           919 Congress Ave., Suite 1325
           Austin, TX, 78701
           Tel: (512) 993-3070
           Email: steve@hilliardshadowenlaw.com

           Peter Kohn
           Faruqi & Faruqi, LLP
           101 Greenwood Avenue, Suite 600
           Jenkintown, PA 19046
           Tel: (215) 277-5770
           Email: pkohn@faruqilaw.com

           Bruce E. Gerstein
           Garwin Gerstein & Fisher LLP
           88 Pine Street, 10th Floor
           New York, NY 10005
           Tel: (212) 398-0055
           Email: bgerstein@garwingerstein.com


If to Defendant:    J. Mark Gidley
           Peter J. Carney
           Eileen M. Cole
           White & Case LLP
           Washington, DC 20005
           Tel: (202) 626-3600
           Email: mgidley@whitecase.com
               pcarney@whitecase.com
               ecole@whitecase.com

If to Escrow Agent:   THE HUNTINGTON NATIONAL BANK
Attention:  Robyn Griffin, Senior Vice President
One Market Street, Suite 3608, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8318
E-mail: robyn.griffin@huntington.com

Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA4E63
Columbus, Ohio 43219
Telephone: (614) 331-9804
E-mail:  susan.brizendine@huntington.com

14.   Patriot Act Warranties.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify, and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide Escrow Agent with such Identification Information as Escrow Agent may request in order for Escrow Agent to satisfy the requirements of the Patriot Act.

15.   Entire Agreement.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.   Governing Law.  This Escrow Agreement shall be governed by the laws of the Commonwealth of Massachusetts in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.   Termination of Escrow Account.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

7

18.    <u>Miscellaneous Provisions.</u>

(a)    <u>Counterparts.</u>  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)    <u>Further Cooperation.</u>  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement, or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege, or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)    <u>Non-Waiver.</u>  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By:    _____
        Robyn Griffin, Senior Vice President

Class Counsel
By:    _____
Thomas M. Sobol
Lauren Guth Barnes
Kiersten A. Taylor
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, Massachusetts 02142
Tel: 617-482-3700
Fax: 617-482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
lauren@hbsslaw.com
kierstent@hbsslaw.com

By:    _____
Bruce E. Gerstein
Joseph Opper

8

Dan Litvin
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____

Peter Kohn
Joseph T. Lukens
Neill W. Clark
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com
nclark@faruqilaw.com

By: _____

Steve D. Shadowen
D. Sean Nation
Matthew C. Weiner
HILLIARD & SHADOWEN LLP
919 Congress Ave., Suite 1325

Austin, TX 78701

Tel: (512) 993-3070
steve@hilliardshadowenlaw.com
sean@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com


Defense Counsel

By: _____

J. Mark Gidley
Peter J. Carney
Eileen M. Cole
WHITE & CASE LLP
Washington, DC 20005
Tel: (202) 626-3600
mgidley@whitecase.com
pcarney@whitecase.com
ecole@whitecase.com

9

## Exhibit 1

## Fees of Escrow Agent

**Acceptance Fee:**                                                                     **Waived**

The Acceptance Fee includes the review of the Escrow Agreement,
acceptance of the role as Escrow Agent, establishment of Escrow
Account(s), and receipt of funds.

**Annual Administration Fee:**                                                          **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Escrow Account
including daily account management, generation of account
statements to appropriate parties, and disbursement of funds in
accordance with the Escrow Agreement.  Administration Fees are
payable annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                                            **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

10

# Exhibit B

## (Filed Under Seal)