UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re ASACOL ANTITRUST LITIGATION | Civil Action No. 1:15-cv-12730-DJC |
| *This document relates to:*<br>All End-Payor Actions | |

**DEFENDANTS' MOTION FOR ORDER REQUIRING EACH OF
THE APPOINTED CLASS REPRESENTATIVES TO TESTIFY LIVE AT TRIAL**

Warner Chilcott hereby moves this Court for an order requiring each of the four appointed Class Representatives to testify at trial, pursuant to the Court's power under Rule 23(d)(1)(C) of the Federal Rules of Civil Procedure to "impose conditions on the representative parties." The reasons for this motion are set forth below:

1.  On November 9, 2017, this Court issued an order granting EPPs' Motion for Class Certification and appointing Teamsters Union 25 Health Services and Insurance Plan ("MA Teamsters"), NECA-IBEW Welfare Trust Fund ("IL NECA"), Wisconsin Masons' Health Care Fund ("WI Masons"), and Minnesota Laborers Health and Welfare Fund ("MN Laborers") as Class Representatives.  D. 563.  Each of the four Class Representatives affirmatively chose to invoke this Court's jurisdiction by filing its complaint here and pursing state-law class-action antitrust claims for hundreds-of-millions of dollars.  Yet, on January 3, 2018—only 18 days before trial—the EPPs informed Warner Chilcott that three of the four Class Representatives appointed by this Court—IL NECA, WI Masons, and MN Laborers—refuse to agree to testify at their own trial.  Only MA Teamsters has agreed to testify at trial.

In contrast, the EPPs listed thirteen (13) current or former Warner Chilcott employees on their witness list and have sought to have many attend in person. Although all reside out of state and are outside the subpoena power of the Court, aware of the importance of the case ten (10) have agreed to travel to Boston—from Connecticut, Illinois, Ohio, and New Jersey—to testify at trial.

2. The Class Representatives' refusal to testify at trial violates Defendants' well-established fundamental right under the Seventh Amendment "to confront, cross-examine and impeach adverse witnesses." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring); *see also Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) ("We have frequently emphasized that the right to confront and cross-examine witnesses is a fundamental aspect of procedural due process."); *id.* ("The right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause.").

3. Testimony from each of the Class Representatives is relevant and non-duplicative. The details of the Class Representatives' plans and formularies vary—including, for example, what and how they reimburse, level of co-pays, the role of their PBMs, and any pass-on or rebates that exist—and are relevant to standing, impact, injury, and the calculation of damages. *See* D. 563 at 38 ("For purposes of the total damages calculation the jury must perform, however, Strombom's opinions regarding the likely impact of generic entry, the importance of rebates and coupons in offsetting damages and price trends in a but-for world remain of value . . . ."); D. 663 (denying EPP Plaintiffs' motion *in limine* to exclude evidence regarding "Average and 'Net' Antitrust Impact and Premium 'Pass-On'" and concluding that such evidence "bears upon injury as well as damages").

Each of these insurer Class Representatives has established different insurance plans and formularies, and each has different reimbursements, pass-ons, and rebates. For example:

- Each Class Representative has different contracts with employers, with different methods of setting employer contribution rates, evaluating those rates, and determining future contribution levels.

- While all EPP Class Representatives have PBMs, each one has different contracts with different terms—this is especially true for MN Laborers, which has a different PBM (Envision) than the other three (Express Scripts).

- The proposed sole testifying Class Representative, MA Teamsters, is unusual among the Class Representatives in that it does not defer to its PBM for formulary placement decisions. Instead, MA Teamsters has its own pharmacy therapeutics committee that closely manages its formulary quarterly. MA Teamsters is also aggressive with the rebate guarantees it contracts for through its PBM. IL NECA, WI Masons, and MN Laborers have their PBMs—Express Scripts and Envision—set up their formularies and manage their drug reimbursements.

- MN Laborers' members purchase pharmaceutical drugs through a cash-and-carry plan in which the member initially purchases the pharmaceutical drug at full price, and then is reimbursed—either partially or in full—by MN Laborers. The cash-and-carry plan also enables the member to shop around for the best priced pharmaceutical drugs.

- Additionally, mitigation of damages for each representative would not be the same. For example, MA Teamsters has kept Asacol HD and Delzicol on its formulary, whereas both WI Masons and IL NECA took Asacol HD and Delzicol off their formulary in 2016—a PBM "hard switch" that, in fairness, the jury should hear about and assess, and which bears on product market, switching conduct, legality, injury, and damages. For MN Laborers, Asacol HD and Delzicol were secondary treatments and had moved to non-preferred, secondary treatment status in 2017. Yet, IL NECA, WI Masons, and MN Laborers refuse to appear and testify live at trial, thus compromising Defendants' ability to adduce this testimony before the jury.

4. Presence at trial is key to adequacy as a Class Representative. If IL NECA, WI Masons, and MN Laborers do not appear at their own trial as parties and as appointed Class Representatives, the Court should remove them from their fiduciary role as Class Representatives, and leave MA Teamsters as the Class Representative. *See, e.g.*, *Bohn v. Pharmavite, LLC*, No. 11-10430, 2013 U.S. Dist. LEXIS 125006, at *8 n.4 (C.D. Cal. Aug. 7, 2013) ("[W]e cannot . . . imagine a scenario in which [the class representative] would not testify

3

at trial about the circumstances of her purchase, if only to set up the basis of this suit."). Consistent with its "duty and . . . broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," this Court should mandate that only plaintiffs able to testify at trial can represent the class. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also Key v. Gillette Co.*, 104 F.R.D. 139, 140 (D. Mass. 1985) (re-assessing representative's adequacy at time of trial).

Courts do not hesitate to remove Class Representatives who refuse to appear at trial. If absent at trial, IL NECA, WI Masons, and MN Laborers cannot adequately fulfill their duties as Class Representatives under Rule 23(a)(4) of the Federal Rules of Civil Procedure to vigorously pursue this action, exercise their roles as fiduciaries, or check the discretion of trial counsel. *See In re Northrop Grumman Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 94451, at *59-61 (C.D. Cal. Mar. 29, 2011) (commitment "to testify at trial if necessary" is the "kind of participation [that] comports with what courts expect of class representatives"); *Arabian v. Sony Elecs., Inc.*, 2007 U.S. Dist. LEXIS 12715, at *21-23 (S.D. Cal. Feb. 22, 2007) (rejecting class representative as inadequate because "it is difficult to see how a representative would be able to check the discretion of trial counsel when the representative is [absent] for the trial's entire duration"); *In re Tyco Int'l Ltd. Mult. Dist. Litig.*, 2006 U.S. Dist. LEXIS 58278, at **16-20 (D.N.H. Aug 15, 2006) (deeming representatives adequate, in part, because they committed to testifying at trial); *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 396 (D.N.J. 1998) (finding unavailable representative inadequate "[i]n light of the availability of other adequate class representatives" and his inability "to attend trial has the potential for seriously interfering with his obligation to vigorously prosecute th[e] action").

5. The refusal of IL NECA, WI Masons, and MN Laborers to attend trial will also compromise Defendants' ability to probe standing or other elements of the class's claims, which include 26 state laws with distinct elements. *See, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 69, 75 (1st Cir. 2012) (holding that courts siting in diversity must analyze "whether the [state] statute gives *that plaintiff* authority to sue (statutory standing)" according to "state substantive law") (emphasis added); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("[A] plaintiff must have standing under . . . applicable state law in order to maintain a cause of action.").

Unless IL NECA, WI Masons, and MN Laborers testify, EPPs cannot authenticate the purchase data EPPs proffered to support these plaintiffs' standing and adequacy as representatives of the class (much less injury, impact, and damages). *See* Mem. Supp. Mot. Class Cert. 10 & n.13, June 26, 2017, ECF No. 381 (arguing data shows that the "interests of TPPs and consumers are . . . aligned"); *Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir. 1992) (concluding that court properly excluded antitrust plaintiff's evidence because plaintiff "failed to produce a qualified witness or custodian of records to authenticate" it); *Shirokov v. Dunlap, Grubb & Weaver PLLC*, No. 10-12043-GAO, 2012 U.S. Dist. LEXIS 42787, at *47 (D. Mass. Mar. 1, 2012) (holding that standing is "an indispensable part of the plaintiff's case" that must be proven "at successive states of the litigation") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) ("[T]he court may reconsider whether the plaintiffs have standing or have been appropriately certified as a class at the trial stage of the litigation"). Furthermore, the refusal of IL NECA, WI Masons, and MN Laborers to testify and authenticate their purchase data will compromise Defendants' ability to confront the EPPs' damages expert—Dr. Conti (who has eschewed the use of actual purchase

data using instead prescription data)—with data of actual purchases that is central to any private damages antitrust case.

## CONCLUSION

For the foregoing reasons, the Court should issue an order pursuant to its authority under Rule 23(d)(1)(C) of the Federal Rules of Civil Procedure and require each of the four appointed Class Representatives to testify at trial. If any Class Representative refuses to testify, the Court should remove it as a Class Representative.

Dated: January 6, 2018

Respectfully submitted,

**WHITE & CASE**

/s/ *J. Mark Gidley*
J. Mark Gidley (PHV)
Peter J. Carney (PHV)
Eileen M. Cole (PHV)
Noah Brumfield (PHV)
Dana Foster (PHV)
Matthew S. Leddicotte (PHV)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
mgidley@whitecase.com
pcarney@whitecase.com
ecole@whitecase.com
nbrumfield@whitecase.com
defoster@whitecase.com
mleddicotte@whitecase.com

Alison Hanstead (PHV)
Michael J. Gallagher (PHV)
Jack E. Pace III (PHV)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York  10020
Telephone:   + 1 212 819 8200
Facsimile:    + 1 202 354 8113
ahanstead@whitecase.com
mgallagher@whitecase.com

jpace@whitecase.com

Kate Dyson (BBO # 679106)
Kevin C. Adam (BBO # 684955)
WHITE & CASE LLP
75 State Street, Floor 24
Boston, Massachusetts  02109
Telephone:    + 1 617 979 9300
Facsimile:    + 1 617 979 9301
kate.dyson@whitecase.com
kevin.adam@whitecase.com

*Counsel for Defendants*

## LOCAL RULE 7.1 CERTIFICATION

    I, Dana Foster, counsel for Defendants, certify that counsel for Defendants complied with Local Rule 7.1 by conferring with Plaintiffs' counsel in good faith to resolve or narrow the issues raised by this motion. Plaintiffs' counsel do not assent to the relief requested in this motion.

_____

Dana Foster

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing DEFENDANTS' MOTION FOR ORDER REQUIRING EACH OF THE APPOINTED CLASS REPRESENTATIVES TO TESTIFY LIVE AT TRIAL filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 6, 2018.

/s/ *J. Mark Gidley*